# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DONALD T. PETERS,                           Case No. 1:10-cv-678
    Plaintiff                           Barrett, J.
                                            Litkovitz, M.J.

   vs

COMMISSIONER OF                             **REPORT AND**
SOCIAL SECURITY,                            **RECOMMENDATION**
   Defendant

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in

opposition (Doc. 9), and plaintiff's reply memorandum. (Doc. 10).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1959 and was 49 years old at the time of the decision of the

administrative law judge (ALJ). Plaintiff has a high school education and past relevant work

experience as a construction helper, laborer and industrial truck operator.

Plaintiff filed applications for DIB and SSI on April 3, 2006, alleging disability since

June 1, 2001, due to Klippel-Feil Syndrome[1], low back pain and anxiety. (Tr. 118-22, 133).

Plaintiff's applications were denied initially and upon reconsideration. (Tr. 76-85, 89-97).

Plaintiff requested and was granted a de novo hearing before an ALJ. (Tr. 98-100). On October

---

[1] Klippel-Feil syndrome is a congenital condition "characterized by shortness of the neck resulting from reduction in the number of cervical vertebrae or the fusion of multiple hemivertebrae into one osseous mass; the hairline is low and motion of the neck is limited." *Dorland's Illustrated Medical Dictionary*, 1860 (31st edition 2007).

28, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before

ALJ Donald A. Becher. (Tr. 33-75). A medical expert (ME), Arthur Lorber, M.D., and a

vocational expert (VE), Robert E. Breslin, also appeared and testified at the hearing.

On November 26, 2008, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. (Tr. 23-32). The ALJ determined that plaintiff has the following severe

impairments: Klippel-Feil syndrome and status post L4-5 laminectomy and diskectomy. (Tr. 25).

The ALJ further determined that plaintiff's diagnosed condition of pain disorder associated with

psychological factors as determined at his consultative mental examination in July 2006 is a non-

severe medically determinable impairment. (Tr. 26). The ALJ found that plaintiff's impairments

do not alone or in combination meet or equal the level of severity described in the Listing of

Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27). According to the ALJ,

plaintiff has the physical residual functional capacity (RFC) to perform sedentary work with the

following limitations:

> [Plaintiff] can lift 10 pounds occasionally and less than 10 pounds frequently. He
> can stand or walk a total of two hours. He can sit a total of six hours but not for
> more than one hour at any one time, and then must have the opportunity to stand
> for a few minutes before sitting again. He must avoid work involving vibration.
> He cannot climb ladders, scaffolds, or ropes. He can occasionally climb stairs and
> ramps. He can occasionally bend, stoop, and crouch. He cannot kneel, crawl,
> balance, or work around unprotected heights or dangerous machinery. He can
> occasionally perform overhead work. Rotation of the head is limited to 25° in any
> direction.

(*Id.*). The ALJ next found that plaintiff's medically determinable impairments could reasonably

be expected to cause the alleged symptoms; however, plaintiff's statements concerning the

intensity, persistence and limiting effects of these symptoms are not credible to the extent they

are inconsistent with the above RFC. (Tr. 28). Using Medical-Vocational Rules 201.21 and

201.28 as a framework for decision-making, and relying on the testimony of the VE, the ALJ

determined that plaintiff is not capable of performing his past relevant work. (Tr. 30-31). The

ALJ further determined that plaintiff is capable of performing a significant number of jobs in the

national economy including jobs as an order clerk, unskilled atomizer assembler, inspector, and

hand packer. (Tr. 31). Consequently, the ALJ concluded that plaintiff is not disabled under the

Act and is therefore not entitled to disability benefits. (*Id.*).

Plaintiff's request for review by the Appeals Council was denied, making the decision of

the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g). The Court's sole function is to determine whether the record as a whole contains

substantial evidence to support the Commissioner's decision. The Commissioner's findings

stand if they are supported by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing

*Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the

Commissioner's findings are supported by substantial evidence, the Court must consider the

record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age

65, file an application for such benefits, and be under a disability as defined by the Social

Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two

findings. First, plaintiff must suffer from a medically determinable physical or mental

3

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources.  20 C.F.R. § 416.202.  To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.  20 C.F.R. § 404.1520(d).  Fourth, if the individual's impairments do not meet or equal

4

those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981).

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

Plaintiff has the burden of proof at the first four steps of the sequential evaluation process. *Wilson* v. *Commissioner of Social Security,* 378 F.3d 541, 548 (6th Cir. 2004). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other

5

substantial gainful employment and that such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff s individual capacity to perform alternate work considering plaintiffs age, education, and background, as well as the job requirements. *Wilson,* 378 F.3d at 548. *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson,* 378 F.3d at 548.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters* v. *Comm'r of Soc. Sec.,* 127 F.3d 525, 529-530 (6th Cir. 1997). *See also Harris* v. *Heckler,* 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). Likewise, a treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a nonexamining medical advisor. *Shelman* v. *Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 416.927(d)(2); *see also Blakley* v. *Commissioner,*

581 F.3d 399, 406 (6th Cir. 2009); *Wilson,* 378 F.3d at 544. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker* v. *Shalala,* 40 F.3d 789, 794 (6th Cir. 1994). The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 416.927(d). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 416.927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(d)(3)-(6); *Wilson,* 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 416.927(d)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 416.927(d). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical

issues related to his or her area of specialty than to the opinion of a source who is not a

specialist." 20 C.F.R. § 416.927(d)(5).

Pain or other symptoms may be severe enough to constitute a disability, if caused by a

medical impairment.  *See Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981)(pain

alone may constitute a disability); *see also* 20 C.F.R. §404.1529.  When evaluating pain or other

symptoms, the Commissioner's Regulations require ALJs to consider all the evidence including

medical history, medical signs and laboratory findings, the claimant's statements, and treating

and other medical source opinions.  20 C.F.R. §404.1529(c)(1).  Although the Regulations

concerning pain and other symptoms are lengthy, the Sixth Circuit Court of Appeals has

enunciated the applicable standard in "a more succinct" two-part analysis.  *Felisky v. Bowen*, 35

F.3d 1027, 1038 (6th Cir. 1994).  Part one considers "whether there is objective medical

evidence of an underlying medical condition."  *Felisky*, 35 F.3d at 1038 (quoting  *Duncan v.*

*Secretary,* 801 F.2d 847, 853 (6th Cir. 1986)).  If such objective medical evidence exists, then

part two requires consideration of two alternative questions:

1.  Whether objective medical evidence confirms the severity of the alleged pain [or other symptom] arising from the condition; or

2.  Whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain [or other symptom].

*Felisky*, 35 F.3d at 1038-39 (quoting *Duncan*, 801 F.2d at 853).

Neither *Felisky's* two-part test nor the Regulations upon which it is based require

objective medical evidence of pain itself.  *Felisky*, 35 F.3d at 1039.  The Social Security

Regulations provide, "we will not reject your statements about the intensity and persistence of

8

your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §404.1529(c)(2). Consequently, the Regulations require ALJs to consider a list of factors including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications taken to alleviate symptoms; treatment, other than medication, obtained for symptom relief; any measures used to alleviate pain (e.g., lying flat, standing 15 or twenty minutes every hour, sleeping on a board, etc.); and other factors concerning the claimant's functional limitations. 20 C.F.R. §404.1529(c)(3)(i)-(vii); Social Security Ruling 96-7p.

An ALJ's findings concerning the credibility of a claimant's testimony about his or her pain or other symptoms "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." (*Id.*). Social Security Ruling 96-7p states, in relevant part:

> The reasons for the credibility finding must be grounded in evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. The determination must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).

9

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043, 1990 WL 94, at *3 (6th Cir. Jan. 2, 1990). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## MEDICAL EVIDENCE

The record contains treatment notes from plaintiff's treating orthopedic surgeon, Dr.
Stern, dated from September 1, 1993 through June 26, 2008. (Tr. 185-241, 283-309). In 1995,
plaintiff underwent a laminectomy and diskectomy to repair a herniated disc at L4-5 as a
consequence of a work-related injury. (Tr. 208-17, 226-28). Following this surgery, plaintiff
complained of mild discomfort but was able to return to full-time work. (Tr. 199, 202-07).

In December 1999, Dr. Stern noted in that plaintiff had Klippel-Feil syndrome as
evidenced in an x-ray showing fusion of the cervical vertebrae. (Tr. 199). The x-ray showed a
fusion of the skull to the odontoid and cervical vertebrae. There was a fusion of all of the
cervical vertebrae. Dr. Stern noted "[v]ery unusual neck x-rays." (Tr. 199). X-rays of the
lumbar spine showed slight narrowing at the L4-5 and L5-S1 discs. (Tr. 200).

Plaintiff exhibited good range of motion and strength at his June 2000 check-up. (Tr.
198). He reported intermittent mild low back discomfort and mild radiation into his left lower
extremity on an off and on basis in November 2000. Dr. Stern also noted that plaintiff took no
medication. (Tr. 197). When plaintiff returned in September 2001, he reported a severe flare-up
of low back pain. Dr. Stern noted marked inflammation of plaintiff's back and administered two
high dose cortisone injections and provided Percocet for pain. (Tr. 195). Lumbar spine x-rays
were normal. (Tr. 195-96). Three days later, plaintiff stated that his condition was "much
improved" and that he would return to work the following Monday. (Tr. 194).

In June 2002, plaintiff reported "occasional problems with stiffness" but that he otherwise
was doing "quite well." Plaintiff stated that the injections he had received previously had helped
"a great deal." (Tr. 193).

11

In March 2003, plaintiff reported low back pain, but he declined medication. Dr. Stern noted that plaintiff had not worked for over a year and that "[w]e have not kept him off work." (Tr. 192). He was doing some construction work with his brother and he is able to do that. Dr. Stern reported that plaintiff had "not done badly" with his back. (Tr. 192).

In November 2003, Dr. Stern opined:

> [Plaintiff] said he has not worked for the last two years, but that is not because we kept him off . . . . He has had no back symptomatology. He has no neurological deficit. He has had an excellent result from his surgical endeavors. I do not know what else to offer him. He wants to know about increasing his disability from 10 to 25%. I told him he wouldn't get it.

(Tr. 191).

In July 2004, plaintiff reported some back spasms, mild discomfort going into his lower extremities, but no weakness. Plaintiff noted he was seeing Dr. Stern "just to let me know what is going on. He is really not having any major problems." Plaintiff indicated that he was not taking medication. (Tr. 190).

In March 2005, plaintiff reported that he took mostly Tylenol for his back pain and requested stronger medication. Dr. Stern noted that plaintiff continued to have low back pain with left leg gluteal radiation. (Tr. 189). In October 2005, plaintiff indicated that his low back pain was "intermittent" and that he took an "occasional pain pill." (Tr. 188).

In April 2006, plaintiff complained of severe neck spasms and pain. Dr. Stern noted that plaintiff's low back pain was mild but that, mainly because of his neck pain, plaintiff had "no industrial potential whatsoever." Dr. Stern prescribed a muscle relaxant to reduce the spasms and a painkiller. (Tr. 187).

On June 15, 2006, plaintiff was seen by Dr. Ray, for a consultative examination. (Tr. 242-49). Plaintiff reported that he experienced constant aching in his neck that at times became severe and radiated into his head. (Tr. 243). He indicated that his low back pain was "intermittent" and triggered by being on his feet for more than an hour at a time. (Tr. 243-44). He reported that he could sit for 15 to 60 minutes at a time and walk two blocks at a time. (Tr. 244). Plaintiff noted that he drove only when absolutely necessary and has trouble driving because of the limited motion of his cervical spine. Examination revealed that plaintiff ambulated with a mild, wide-based gait. (*Id.*). Dr. Ray noted a mal-alignment of the spine and tenderness in the midline lumbosacral area, but no muscle spasms, a negative Spurling's maneuver, negative straight leg raising, no joint abnormalities, 4 to 4+/5 muscle strength, and no difficulty with gripping and manipulating. (Tr. 245-46). Dr. Ray assessed that based upon the history, physical exam, and review of medical records it was most compatible with Klippel-Feil Syndrome, cervical fusion from C2-C4, with severe limitation of motion of the cervical spine, and a herniated disc at L4-L5 which required a laminectomy. (Tr. 245). Dr. Ray concluded that there was no clear evidence of myelopathy or radiculopathy.[2] (*Id.*). Dr. Ray opined that plaintiff could lift and carry up to 10 pounds, sit or stand for 30 minutes at a time, and walk for 15 minutes at a time before having to change positions. (*Id.*). Plaintiff should avoid repetitive overhead reaching, extensive movement of the cervical spine, and kneeling, crawling, and climbing. (*Id.*). Plaintiff could occasionally bend and stoop, partially squat, and handle objects without difficulty. (*Id.*).

---

[2] Myelopathy refers to any of various functional disturbances or pathological changes in the spinal cord. *Dorland's Illustrated Medical Dictionary,* 1239 (31st edition 2007). Radiculopathy refers to disease of the nerve roots. *Id.*

13

On July 19, 2006, plaintiff was seen by Dr. Fritsch, a consultative psychologist, for an evaluation. (Tr. 250-55). Following a clinical interview with mental status evaluation and review of records, Dr. Fritsch diagnosed a pain disorder associated with both psychological factors and medical condition. Dr. Fritsch concluded that plaintiff would be capable of performing simple repetitive and semi-technical tasks; would be able to maintain adequate attention, persist and perform tasks; but did not have the social skills necessary to work in customer service positions. Dr. Fritsch noted that plaintiff's psychological symptoms are secondary to the medical factors in escalation of pain and that in the absence of medical problems psychological factors were not a major obstacle to a work related adjustment. Dr. Fritsch concluded that the combination of physical and psychological symptoms would impose a mild impairment to plaintiff's response to work-related stress and demands. (Tr. 253).

On August 16, 2006, state agency reviewing physician, Dr. Villanueva, opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk two hours in an eight-hour work day, but he would need to alternate between sitting and standing at least every hour; frequently push and/or pull with his arms and balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally do bilateral overhead lifting; and was unlimited in his ability to handle, finger, and feel. (Tr. 276-78). Dr. Villanueva also opined that plaintiff could never climb ladders, ropes, or scaffolds. (Tr. 277). Dr. Villanueva concluded that plaintiff should avoid even moderate exposure to environmental hazards such as machinery, heights, etc. (Tr. 279).

14

Examination findings in September and November 2006 from Dr. Stern revealed back spasms, tenderness in the low back, and slight radiation of pain. (Tr. 302-03). Dr. Stern continued to prescribe a muscle relaxant and pain medication. (Tr. 303). Dr. Stern noted that plaintiff was applying for disability benefits and reported that plaintiff was "markedly restricted in his work ability. I am not saying that he couldn't be actively employed in a sedentary job, but it would be difficult for him to be on a continuous basis." (Tr. 302).

In January 2007, state agency reviewing physician, Dr. Morton, affirmed Dr. Villanueva's August 2006 assessment. (Tr. 274).

Plaintiff complained of back spasms from January 2007 through August 2007. (Tr. 294-299). In August 2007, Dr. Stern noted that injections might be necessary in the future if plaintiff's spasms continued. (Tr. 294). In September 2007, Dr. Stern noted that plaintiff was walking with his back straight up, he has severe spasms and "can barely ambulate." (Tr. 293). By October 2007, Dr. Stern noted that plaintiff should start tapering down his pain medication "as much as possible." (Tr. 292). Dr. Stern noted low back pain with tenderness and loss of motion, but that the neurological examination was "negative" and that plaintiff's back condition had "reached the point where he just need[ed] symptomatic treatment alone." (Tr. 292). In November 2007, Dr. Stern noted that plaintiff was "doing reasonably well with his back," although a bout of colitis unrelated to plaintiff's back injury had aggravated his pain. Dr. Stern observed some back discomfort with pain radiating into plaintiff's legs, but no specific neurological deficits. (Tr. 291).

In January and February 2008, Dr. Stern reported that plaintiff was doing "really . . . reasonably well" and "pretty well with intermittent pain management" and exhibited no specific

15

neurological deficits. (Tr. 289-90). In March 2008, clinical examination revealed paraspinal spasms with gluteal radiation and tenderness, but no neurological deficit. (Tr. 288).

In April 2008, Dr. Stern noted marked flare-up of plaintiff's back with a lot of spasms and loss of motion. Dr. Stern opined that plaintiff was not "capable of sustaining gainful, suitable employment." (Tr. 287). In May 2008, plaintiff exhibited back spasms with gluteal radiation. There was slightly straight leg raising on the left and right with pain radiating into the buttocks area but without specific neurological deficit. He had a hard time coming to a erect posture. Dr. Stern also noted that plaintiff's back is complicated by Klippel-Feil syndrome. Dr. Stern continued to prescribe muscle relaxants and pain pills. (Tr. 286).

On June 26, 2008, Dr. Stern reported that his treatment of plaintiff had been "entirely directed towards that herniated disc" because that was what plaintiff's Worker's Compensation account covered. Dr. Stern also reported that plaintiff suffers from Klippel-Feil syndrome "which has a fusion of that cervical spine from the skull to the odontoid and the odontoid all the way down the cervical spine is essentially fused resulting in almost no motion of the patient's neck in any direction. There is severe neck discomfort when he tries to increase his physical activities." (Tr. 284). Dr. Stern opined that plaintiff's Klippel-Feil syndrome "would prevent him from finding suitable and gainful employment, other than sedentary type work. Considering his multiple combination of 2 problems; one, the Klippel-Feil Syndrome of the cervical spine, which is quite obvious and the second problem of the low back condition with a herniated disc, with chronic low back discomfort and chronic neck discomfort, he is basically not a candidate to perform suitable and gainful employment." (Tr. 284).

16

## MEDICAL EXPERT TESTIMONY

Dr. Lorber, a board certified orthopedic surgeon, testified as a medical expert at the administrative hearing. (Tr. 40-41). Dr. Lorber summarized the medical evidence and opined that plaintiff's impairments did not meet or equal Listing 1.04, citing treatment notes indicating that plaintiff did not exhibit focal neurological deficits. (Tr. 42-43).

Dr. Lorber opined that based on his severe medical impairment, plaintiff would be limited to sedentary work activities. He testified that plaintiff was limited to lifting 10 pounds occasionally and less than 10 pounds frequently; standing and/or walking two hours in an eight-hour work day; and sitting for six hours in an eight-hour work day, for no more than one hour at a time. Dr. Lorber opined that plaintiff would need to be able to stand for a few minutes before sitting again. Dr. Lorber also opined that plaintiff should avoid exposure to vibration, unprotected heights, and dangerous moving machinery; he should never climb ladders, ropes, or scaffolds, but could occasionally ascend ramps and stairs; he could occasionally bend, stoop, crouch; he should not kneel, crawl, or balance; and he could occasionally perform overhead work, but with no other manipulative restrictions. (Tr. 43-45).

Dr. Lorber further testified that based on plaintiff's Klippel-Feil Syndrome, he would add the additional limitation of no frequent rotation of the head. (Tr. 44). Dr. Lorber specifically acknowledged he had not imposed any limitations regarding grasping. (Tr. 45). He found no evidence in the record of any major problems involving the joints of the upper extremities. (*Id.*)

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the administrative hearing that he stopped working because he could not turn his neck. (Tr. 51). Plaintiff indicated that when he turned his head he felt pain and he

17

could hear grinding. (Tr. 51). Plaintiff testified that he could drive a truck, but that he rotated his whole body to minimize his neck rotation. (Tr. 52). He had not driven at night in over ten years. (Tr. 59). Plaintiff testified that due to his neck, he had trouble with lifting. (Tr. 52). He also had trouble walking. He stated the more walking he did the more it hurts and throbs, and he tried to walk softly. *Id.* As it related to getting up or down, plaintiff testified that he had no problem getting down. The problem was getting back up, noting his low back would go out. He took medication: Oxycodone for pain and Flexeril, a muscle relaxant. (Tr. 53). The Flexeril caused dry mouth and he would get lightheaded or a little dizzy from the Oxycodone. (Tr. 64).

Plaintiff reported that he attempted to do home exercises daily. He could lift a twelve pack of Coke but in order to carry it he had to hold it against his body and tucked under his arm. (Tr. 53). He could not lift a 24 pack because it was too heavy. (*Id.*).

Plaintiff estimated that he could stand for 45 minutes to an hour before he experienced pain. (Tr. 54). He noted that sitting helped relieve low back pain but not the cervical or head pain that he experienced. (*Id.*). Plaintiff indicated he laid down to relieve pain. (*Id.*). Plaintiff testified that standing primarily bothered his low back but walking bothered both his neck and upper back. He generally did pretty well with sitting if he was able to stay still. (Tr. 55).

As to his daily activities, plaintiff testified that he was responsible for checking up on his mother, who had Alzheimer's disease, and administering her medications. (Tr. 57-59, 62). He testified that he did not shop as frequently as before, and that he and his mother shared laundry and cooking responsibilities. Cooking involved mainly using the microwave. (Tr. 59-60). He went to store only once a month and would take his mother to the doctor if it was only a mile

18

from his house. (Tr. 59). He cleaned his room approximately once per month and did no lawn or maintenance activity. (Tr. 60-61).

Plaintiff also testified that he had problems with gripping or grasping with his right hand; his hand "justs lock up on me" and he dropped things. This occurred once or twice a week. (Tr. 61-62).

**OPINION**

Plaintiff asserts five assignments of error in this matter. First, plaintiff contends the ALJ's finding that plaintiff can perform sustained work activities is not supported by substantial evidence. Second, plaintiff contends the ALJ failed to comply with agency regulations by not affording adequate weight to the opinion of plaintiff's treating physician and by failing to provide adequate reasons for his rejection of that opinion. Third, plaintiff asserts the ALJ failed to consider the relevant regulatory factors in evaluating the opinion of plaintiff's treating physician. Fourth, plaintiff asserts the ALJ failed to comply with SSR 96-7p in evaluating plaintiff's credibility. Fifth, plaintiff asserts the ALJ failed to properly evaluate plaintiff's complaints of disabling pain. Plaintiff's first three errors raise similar issues and will be considered together. Plaintiff's final two errors also raise related issues and will likewise be considered together.

**I. The ALJ properly evaluated the medical opinions of record.**

Plaintiff contends the ALJ erred in rejecting the opinions of his treating physician, Dr. Stern, and the consultative examiner, Dr. Gary Ray. Plaintiff also asserts that the ALJ should have re-contacted Dr. Stern to obtain additional information in order to verify plaintiff's treatment records and to verify his narrative conclusions. Plaintiff further maintains the ALJ

19

improperly substituted his own opinion for that of Dr. Stern and Dr. Ray.  Each assertion will

addressed in turn.

### A. Weight to Dr. Stern's opinions

On June 26, 2008, Dr. Stern provided a narrative assessment wherein he opined that

plaintiff's Klippel-Feil syndrome would prevent him from finding suitable and gainful

employment other than sedentary type work.  (Tr. 284).  The ALJ gave Dr. Stern's findings

"appropriate weight only to the extent that they are consistent with the residual capacity [for

sedentary work]."  (Tr. 29).  The ALJ noted that Dr. Stern's narrative assessment did not describe

any specific limitations in functioning or provide any supporting objective medical evidence

regarding his conclusion that plaintiff was limited in his activities.  (Tr. 29-30).  The ALJ also

noted that Dr. Stern often expressed conflicting opinions relating to plaintiff's functional

limitations.  Plaintiff contends that the ALJ failed to properly weigh Dr. Stern's findings and

failed to provide sufficient reasoning for his rejection of Dr. Stern's findings.  Plaintiff appears to

assert that Dr. Stern's findings should have been given deference because he is most familiar with

plaintiff's back condition having treating plaintiff for fifteen years.

A review of the record shows that the ALJ's decision to afford no significant weight to Dr.

Stern's findings is supported by substantial evidence.  First, the ALJ properly found that Dr. Stern

expressed conflicting opinions throughout the alleged period of disability.  (Tr. 29-30).  As noted

by the Commissioner, a treating source's opinion is entitled to controlling weight only if it is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R.

§404.1527(d)(2).

In this case, on October 6, 2003, Dr. Stern stated that plaintiff had an excellent result from his surgery to repair his herniated disc. (Tr. 191). During that same visit, plaintiff inquired about "increasing his [worker's compensation] disability from 10 to 25%" and Dr. Stern "told him he wouldn't get it." (Tr. 191). Dr. Stern further stating that although plaintiff had not worked in two years, it was "not because we kept him off" noting that plaintiff had no back symptomatology and no neurological deficit. *Id.* Treatment notes from 2004 indicated that plaintiff is "not having any major problems" and clinical findings were consistent with "mild back discomfort." (Tr. 190).

However, in October 2005, Dr. Stern noted that plaintiff was applying for Social Security due to his back problems and Klippel-Feil syndrome. (Tr. 188). Dr. Stern further indicated that plaintiff "is restricted in a considerable amount of work related experience." *Id.* On April 20, 2006, Dr. Stern noted that plaintiff complained of severe neck spasms. (Tr. 187). Dr. Stern opined that plaintiff is markedly limited in his ability to perform work related activities due to his neck problem. *Id.* Dr. Stern further indicated that he would like to get an MRI of plaintiff's cervical spine, however plaintiff did not have insurance to cover the cost of the MRI. *Id.* In July 2006, plaintiff did not complain of any neck problems; however, Dr. Stern again indicated that he believed plaintiff was entitled to Social Security because of his cervical neck problem. (Tr. 304). In November 2006, Dr. Stern found that plaintiff is markedly restricted in his work ability due to his low back problems and Klippel-Feil syndrome. Dr. Stern also indicated that "I am not saying that he couldn't be actively employed in a sedentary job, but it would be difficult for him to be on a continuing basis." (Tr. 302). Treatment notes from 2007 did not indicate that plaintiff complained of neck pain. (Tr. 291-299). In January 2008, Dr. Stern found that plaintiff "is really doing reasonably well." (Tr. 290). However, in April 2008, Dr. Stern indicated that he believed

21

plaintiff deserved Social Security because he did not think plaintiff was capable of sustaining gainful suitable employment, "other than sedentary type." (Tr. 284). Thus, Dr. Stern's most recent disability assessment is internally inconsistent, finding that plaintiff's impairments prevent him from finding gainful employment, yet also finding that plaintiff could perform sedentary work. (284-85). *See Render v. Sec'y of Health & Human Servs.*, Case No. 88-5535, 1989 WL 34104, at *3 (6th Cir. April 3, 1989) (proper to discount treating physician's opinion which was internally inconsistent).

Second, the ALJ reasonably discounted Dr. Stern's opinions because his findings were not supported by the objective and clinical evidence of record. Although Dr. Stern frequently indicated that he believed plaintiff should receive social security benefits, he did not provide any objective medical evidence to support this contention. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (treating physician opinions accorded great weight only when supported by sufficient clinical findings and consistent with the evidence). Notably, Dr. Stern's June 2008 assessment asserts that plaintiff's Klippel-Feil syndrome causes plaintiff severe discomfort with increased physical activities and precludes him from finding suitable and gainful employment. However, Dr. Stern's office notes document few clinical abnormalities or pain related to plaintiff's neck. (Tr. 187, 286, 293). In that regard, the majority of Dr. Stern's treatment notes do not indicate that plaintiff made any complaints relating to neck problems. (Tr. 188-93, 195-199, 202-04, 287-91, 300-03). In addition, Dr. Stern acknowledged that plaintiff's treatment had been "entirely directed towards [his] herniated disc" because plaintiff's neck was not part of his Worker's Compensation claim. (Tr. 284).

22

Additionally, plaintiff has made no attempt to explain how Dr. Stern's findings are supported by his own medical findings or the other evidence of record.  In light of the foregoing, the undersigned finds that the ALJ properly considered the requisite regulatory factors in evaluating Dr. Stern's treatment notes and assessments and reasonably determined that Dr. Stern's opinions were not entitled to controlling weight.  *See* 20 C.F.R. §§ 404.1527(d)(3), (d)(4) (identifying supportability and consistency as factors relevant to the weighing of an opinion).

### B.  Weight to the opinion of Dr. Ray

Plaintiff further asserts that the ALJ failed to provide sufficient reasons for his rejection of Dr. Ray's opinion.  Dr. Ray performed a consultative examination on June 15, 2006, and concluded that plaintiff was capable of less than sedentary work.  (Tr. 242-245).  Dr. Ray found that plaintiff could stand for 30 minutes, walk for 15 minutes at a time, and lift and carry up to 10 pounds.  (Tr. 245).  Dr. Ray also found that plaintiff could rotate his head 15° to the right and 10° to the left.  (Tr. 247).  The ALJ gave Dr. Ray's assessment "appropriate weight" to the extent it was consistent with the ALJ's RFC finding.  (Tr. 29).  The ALJ noted that Dr. Ray's findings were based on a one time assessment and that such findings were inconsistent with plaintiff's testimony at the hearing.

The ALJ's decision is substantially supported in this regard.  First, although Dr. Ray found that plaintiff could stand for only 30 minutes at a time, during the examination with Dr. Ray, plaintiff reported that he could stand up to an hour at one time.  (Tr. 244).  Plaintiff also testified that he could stand for 45 to 60 minutes at one time.  (Tr. 54).  Second, Dr. Ray's findings relating to plaintiff's neck rotation were inconsistent with plaintiff's demonstrated rotation of his head of

35° at the hearing.  (Tr. 29, 69).  Finally, Dr. Ray's restrictive limitations were inconsistent with plaintiff's testimony that he was able to drive a truck.  (Tr. 58-59).

Plaintiff further asserts that the ALJ erred in rejecting Dr. Ray's opinion because he examined plaintiff only one time, yet the ALJ gave significant weight to the testimony of the medical expert who reviewed the record but did not examine plaintiff.  However, as explained below, the ALJ reasonably gave significant weight to the medical expert because his findings were based on a complete review of the record and were consistent with the record as a whole. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (ALJ may rely on non-examining source opinion when the non-examining source bases the assessment on a review of the complete medical record).

In sum, the ALJ properly discounted Dr. Ray's findings because they were not based upon a complete review of the record and were inconsistent with the evidence of record.  In that regard, the ALJ provided a sufficient rationale for his failure to fully adopt Dr. Ray's restrictive functional limitations.

### C.  The ALJ's compliance with agency regulations and controlling law

Plaintiff further asserts that "if the ALJ was not going to accept the conclusions of Dr. Stern, or the conclusions of the consultative examiners, Dr. Ray and Stephen Fritsch, Psy. D., the ALJ at a minimum should have re-contacted Dr. Stern to obtain additional information, verification of [plaintiff's] treatment records, and his narrative conclusions."  (Doc. 6 at 18) (citing 20 C.F.R. § 404.1512(e) (setting forth how the Agency proceeds with re-contacting a claimant's treating physician when the evidence is inadequate for the Agency to determine whether the claimant is disabled)).  As noted by the Commissioner, this duty to "re-contact"

24

occurs only when the ALJ does not have sufficient information to determine if a claimant is disabled. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n.3 (6th Cir. 2009) (ALJ required to re-contact treating physician only when information received is inadequate to reach a determination on disability status, not where ALJ rejects limitations recommended by that physician). *See also Littlepage v. Chater*, 134 F.3d 371, 1998 WL 24999, at *1 (6th Cir. Jan. 14, 1998) (the ALJ's duty to re-contact a treating source was not triggered when all of the treatment notes and information upon which the doctor based his opinion were in the record). Here, the treatment notes from Dr. Stern are part of the record, and plaintiff does not assert that such records are incomplete. Accordingly, the ALJ was not required to re-contact Dr. Stern in this matter. Plaintiff's assignment of error in this regard is not well-taken.

Finally, with respect to the ALJ's evaluation of the medical evidence, plaintiff asserts that the ALJ selectively cited from the record, ignored positive findings from the record that support the conclusion that plaintiff is disabled, and impermissibly substituted his opinion for those of Dr. Stern and Dr. Ray. (Doc. 6 at 19, 20). Plaintiff's assertions lack merit. Notably, plaintiff fails to direct the Court's attention to any evidence supporting his assertion that the ALJ selectively cited to the record. Plaintiff has the burden of proving that he is disabled. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). Thus, plaintiff's argument that the ALJ selectively cited to the record, without citing specific examples, does not persuade the Court that the ALJ erred in this regard.

Plaintiff's argument that the ALJ acted as his own medical expert is also not well-taken. Plaintiff asserts that "in the absence of a medical opinion that plaintiff could perform substantial remunerative work, the ALJ improperly substituted his opinion for the treating medical and

consultative examiners." (Doc. 6 at 19). Plaintiff argues that the ALJ cannot deny disability benefits without some medical opinion plaintiff is capable of gainful employment. Although plaintiff generally recites correct legal principles, he fails to identify any facts to establish that the ALJ violated such principles in this case. The undersigned agrees that an ALJ is not permitted to substitute his own medical judgment for that of a treating physician and may not make his own independent medical findings. *Bledsoe v. Commissioner of Social Sec.*, No. 1:09-cv-564, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011). Thus, an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions; however, he is not permitted to make his own evaluations of the medical findings. *Id*. *See also See also Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).

In the present case, the ALJ properly evaluated the medical opinions and determined that plaintiff was capable of performing a range of sedentary work. Contrary to plaintiff's contention, the ALJ's RFC finding is supported by the testimony of the medical expert, Dr. Lorber. (Tr. 29). Dr. Lorber, an orthopedic surgeon, summarized the medical evidence dating back to 1994 and opined that plaintiff would be limited to sedentary work activities. In that regard, Dr. Lorber found that plaintiff was limited to lifting 10 pounds occasionally and less than 10 pounds frequently; limited to standing and/or walking two hours in an eight-hour work day; limited to sitting for six hours in an eight-hour work day, for no more than one hour at a time; and he would need to be able to stand for a few minutes before sitting again. Dr. Lorber also opined that plaintiff should avoid exposure to vibration, unprotected heights, and dangerous moving machinery; he should never climb ladders, ropes, or scaffolds, but could occasionally ascend ramps and stairs; he could occasionally bend, stoop, crouch; he should not kneel, crawl, or

26

balance; and he could occasionally perform overhead work, but with no other manipulative restrictions. (Tr. 43-45).

The ALJ gave significant weight to Dr. Lorber's assessment because he had the "advantage of review of all the evidence of record, with a longitudinal view of claimant's condition." (Tr. 29). The ALJ noted that Dr. Lorber supported his opinion "with specific citations to medical records." (Tr. 29). The ALJ then discussed the findings of Dr. Stern and Dr. Ray, and found that Dr. Lorber's assessment "was more consistent with the medical evidence of record." (Tr. 30). Notably, Dr. Lorber's findings are consistent with plaintiff's testimony relating to his sitting, standing and lifting limitations, as well as Dr. Stern's finding that plaintiff could perform sedentary work. (Tr. 53-55, 284). Thus, the ALJ evaluated Dr. Lorber's assessment in accordance with agency regulations, and the ALJ's determination that Dr. Lorber's assessment was entitled to significant weight is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(d)(6) (identifying the extent to which a source is "familiar with the other information in [the] case record" as relevant to the weighing of an opinion). *See also* 20 C.F.R. § 404.1527(d)(4) (the more consistent an opinion is with the record as a whole, the more weight the opinion will be given).

Where, as here, there is a conflict in the medical evidence as to plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle*

27

*v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028

(6th Cir. 1990). Here, the ALJ was faced with conflicting evidence relating to plaintiff's ability to

perform sedentary work. As outlined above, the ALJ's resolution of this conflict was done in

accordance with agency regulations and controlling law and is supported by substantial evidence.

**II. The ALJ's credibility determination is supported by substantial evidence.**

Plaintiff's fourth and fifth assignments of error assert that the ALJ erred in evaluating

plaintiff's complaints of pain and credibility. Plaintiff asserts that the ALJ failed to comply with

Social Security Ruling 96-7p and improperly found that plaintiff's complaints of disabling pain

were not supported by objective medical evidence. Specifically, plaintiff contends that his

testimony is supported by medical evidence that satisfies the pain standard and is sufficient to

support a finding of disability. Plaintiff's assertions are not well-taken.

Plaintiff appears to argue that because the ALJ found that he suffers from a severe

impairment, his complaints of disabling pain are consistent with the objective medical evidence.

Plaintiff's assertion is misplaced. A severe impairment or combination of impairments is one

which significantly limits the physical or mental ability to perform basic work activities. 20

C.F.R. §404.1520(c). The severe impairment requirement is a threshold element which plaintiff

must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of*

*H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). Thus, the presence of a severe impairment, alone, is

not indicative of a disabling condition.

Here, there is no dispute that plaintiff suffers from chronic low back pain from his

medically determinable impairments as the ALJ acknowledged. (Tr. 29). However, plaintiff fails

to point to specific record evidence showing the objective medical evidence confirming the

severity of the pain he alleges or that his objectively established medical conditions can

reasonably be expected to produce his allegedly disabling pain. *Duncan,* 801 F.2d at 853.

In his evaluation of plaintiff's credibility, the ALJ noted that plaintiff suffered a work

injury in 1992, culminating in low back surgery in May 1995. The ALJ noted that plaintiff had

excellent results from surgery and was able to return to work. The ALJ found that plaintiff had

conservative treatment since his surgery, including physical therapy and the use of medications.

The ALJ also found that plaintiff had significant pathology evidenced by positive MRI findings of

the lumbar spine in 1994 and a cervical x-ray in December 1999, yet treatment notes from Dr.

Stern in 2007 and 2008 indicate that plaintiff has no neurological deficit. (Tr. 28, 191, 288-89,

290, 291, 292, 299, 302-03). The ALJ also considered Dr. Ray's June 2006 consultative

examination findings, wherein Dr. Ray did not find evidence of radiculopathy or cervical

myelopathy. (Tr. 28, 245).

The ALJ reasonably found that plaintiff's activities of daily living were incompatible with

his complaints of disabling pain. (Tr. 28). Notably, plaintiff was able to care for his personal

needs, drive a truck, take his mother to doctor appointments, and share responsibility for

household duties, such as laundry, shopping, simple cooking and cleaning. (Tr. 52, 57-59, 62).

As a matter of law, the ALJ may consider plaintiff's household and social activities in evaluating

his assertions of pain or limitations. *See Walters v. Commissioner of Social Sec.*, 127 F.3d 525,

532 (6th Cir. 1997); *Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir.

1990). *See also Heston v. Com'r*, 245 F.3d 528, 536 (6th Cir. 2001)(ALJ may consider claimant's

testimony of limitations in light of other evidence of claimant's ability to perform tasks such as

walking, going to church, going on vacation, cooking, vacuuming and making beds).

29

In addition, plaintiff's complaints of disabling pain were inconsistent with testimony relating to his ability to stand and walk. Plaintiff testified that he could sit for 15 to 60 minutes at a time, walk two blocks at a time, stand for about 45 minutes to an hour without discomfort, and carry a twelve-pack of soda. (Tr. 28, 53-54, 244). Such testimony is consistent with the ALJ's RFC finding that plaintiff is capable of performing a range of sedentary work. There is no evidence the ALJ mischaracterized plaintiff's testimony or placed undue weight on his daily activities in determining plaintiff's RFC.[3]

The ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required factors in determining plaintiff's credibility. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. *See also Cruse v. Commissioner,* 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

Based on the foregoing, plaintiff's assignments of error are without merit and should be overruled.

---

[3] In his reply memorandum, plaintiff for the first time asserts that the ALJ improperly found that plaintiff "demonstrated rotation of his head to a degree of 35° in both directions" at the administrative hearing. (Doc. 10 at 4, 6-9). In accordance with case law in this Circuit, however, this Court will not consider new allegations of error first introduced via a reply brief. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986); *Boothe v. Comm'r of Soc.* Sec., No. 1:06-cv-00784, 2008 WL 281621, at *8 n. 1 (S.D. Ohio Jan. 31, 2008) (Spiegel, J.). In any event, the ALJ may consider his personal observations at the hearing, along with all the relevant evidence, so long as the ALJ does not rely solely on his own impressions to make his decision. *Atterbury v. Secretary of Health and Human Services*, 871 F.2d 567, 571 (6th Cir. 1989). Here, the ALJ relied on the medical evidence as well as plaintiff's testimony to support his finding that plaintiff's complaints of pain were not entirely credible. There is no indication that the ALJ relied solely on his own observations at the hearing.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date: 8/29/2011

Karen L. Litkovitz
United States Magistrate Judge

31

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DONALD T. PETERS,                              Case No. 1:10-cv-678
      Plaintiff                            Barrett, J.
                                              Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

32